UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GLEN S. EVANS,                          )
                                        )
            Petitioner,                 )
                                        )
      v.                                )        Case No. 4:20-cv-00097-SRC
                                        )
BILL STANGE,                            )
                                        )
            Respondent.                 )

## Memorandum and Order

In February 2013 Glen Evans drove his friend Matt Cook to Advance, Missouri, so Cook could "take care of some business" with someone.  Cook, who was upset and was texting during the drive, said at one point: "I'm gonna kill him."  Evans also saw that Cook had a gun.  In Advance, Cook shot and killed Sean Crow in a McDonald's parking lot.  Evans and Cook then drove back to Evans's house, where Cook stayed for a few days.  While Cook and Evans were together at an Applebee's, Police officers arrested Cook—then arrested Evans later that night at Evans's house.

A state-court jury found Evans guilty of second-degree murder.  Doc. 11-2 at p. 77.  The state court sentenced Evans to twenty-five years imprisonment.  Doc. 11-1 at p. 820; Doc. 11-2 at pp. 81–83.  Evans appealed his conviction to the Missouri Court of Appeals, which affirmed.  Doc. 11-6.  He did not appeal to the Supreme Court of Missouri.  A state motion court denied Evans's amended post-conviction relief motion after an evidentiary hearing.  Doc. 11-8 at pp. 116–40.  The Missouri Court of Appeals affirmed the motion court, Doc. 11-12, and the Supreme Court of Missouri denied transfer.  Evans remains incarcerated.  Doc. 5 at pp. 1–2.  He now petitions this Court under 28 U.S.C. § 2254 for a writ of habeas corpus, alleging ineffective

assistance of his trial counsel and claiming the state trial court made various errors.  *Id*.  For the

reasons discussed below, the Court denies Evans's petition.

## I.      Facts and Background

According to 28 U.S.C. § 2254(e), "[i]n a proceeding instituted by an application for a

writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence."  The Missouri Court of Appeals described the pertinent facts as follows:

> On Tuesday, February 19, 2013, [Evans] drove his friend Matt Cook (Cook)
> to Advance, Missouri, to "take care of some business" with a guy. During the drive,
> Cook was upset and at one point he said, "I'm gonna kill him." Cook was texting
> and told [Evans], "He thinks he's getting some pu**y." [Evans] also saw a gun that
> Cook told him belonged to his girlfriend, Jackie Rudd (Rudd).

> When they arrived in Advance, Cook told [Evans] to pull into McDonald's.
> McDonald's was a combination fast food restaurant, convenience store, and gas
> station. Surveillance tapes showed [Evans] arrived at 7:10 p.m. After [Evans]
> parked, Cook exited the car and entered the convenience store, and returned about
> five minutes later with no purchases. Across the parking lot, Sean Crow (Crow)
> was sitting in his red pickup truck parked with the headlights on. Cook told [Evans]
> that the person he needed to see was in the red truck across the parking lot. Cook
> told [Evans] to pull around the back of McDonald's, which [Evans] did.

> Cook got out of the car and told [Evans] to pull across the highway and wait
> for him. As Cook walked away from [Evans] and toward Crow's truck, [Evans]
> saw the gun tucked in the back of his pants, in the small of his back. Cook then
> went up to Crow's truck, leaned in the truck window, and shot Crow in the eye with
> a .22 caliber pistol, killing him. Cook then ran back to [Evans]'s car, and told
> [Evans] to park at a nearby Dollar General store and let him out so he could walk
> over and check on Crow, get his phone, and check for evidence. Cook returned with
> $19 and Crow's phone. Cook later had [Evans] pull over so he could smash the
> phone and dispose of it in a dumpster.

> [Evans] and Cook returned to [Evans]'s home. [Evans] told his friend Brent
> Montgomery (Montgomery) that Cook had just shot someone. Cook confirmed this
> fact and put the gun, a .22 caliber, to Montgomery's head and warned him not to
> say anything about it. Montgomery told Cook that he could not kill anyone with a
> .22 caliber, but Cook answered that he could at point blank range, and that he had

shot the man in the eye. [Evans] told Cook to get the gun out of Montgomery's face and to calm down. Montgomery soon left.

The next morning, Wednesday, February 21, 2013, [Evans] told his girlfriend Beth O'Neal (O'Neal), with whom he lived, that Cook needed a place to stay. O'Neal agreed he could stay at their place. Cook was gone most of that day but returned that night and spent most of Thursday and Friday with [Evans] and O'Neal. On Saturday, February 24, 2013, [Evans] was visited by his friend Jamie Abernathy (Abernathy). [Evans], Abernathy, O'Neal and Cook went to Applebee's. At some point, [Evans] took O'Neal home and then came back. While [Evans], Abernathy and Cook were at Applebee's, police officers came in and arrested Cook for nonsupport and Abernathy for a traffic warrant and took them away. [Evans] remained by himself but then left for another bar.

Later that night, at about 2:30 a.m., Sheriff Carl Hefner (Sheriff Hefner) and Trooper Steve Jarrell (Trooper Jarrell) went to [Evans]'s house to interview him because Cook was now a suspect in Crow's murder, and earlier [Evans] had been with Cook at Applebee's. The officers wanted to discern whether [Evans] had any information about the murder. However, after Sheriff Hefner knocked on his front door and O'Neal answered and let him in, [Evans] ran out the side door. Trooper Jarrell pursued [Evans], telling him to stop or he would shoot, but [Evans] continued to run. Eventually, [Evans] was apprehended. Trooper Jarrell asked [Evans] why he had run. [Evans] said he freaked out because he had been at Applebee's earlier with a friend who had been arrested for shooting someone in the head. [Evans] was brought to the sheriff's office where he was read and then waived his *Miranda* rights.

Trooper Scott Stoelting (Trooper Stoelting) interviewed [Evans], who claimed he did not know anything about Crow's murder. [Evans] told Trooper Stoelting he had picked up Cook and drunk a six-pack with him on February 19, 2013, but then left and did not see Cook again until the following Friday. When asked about going to Advance, Missouri, [Evans] said he had not been there in over a year.

[Evans] finally admitted he had driven Cook to Advance, Missouri on the night of February 19, 2013, at Cook's request because Cook had alleged he had "some business to take care of" there. [Evans] told police that although Cook had told him Crow was ripping people off on dope deals, [Evans] figured out after the shooting that the real reason Cook was upset with Crow was because he was sleeping with Cook's girlfriend, Rudd. [Evans] stated he initially thought there might be a fight or a "pistol whip" between Cook and Crow, so he looked the other way as he drove past Crow's truck and parked across the street to wait for Cook. As he was parking, [Evans] saw Cook already running back toward him. [Evans] told police he could not believe Cook could have "done it" already. [Evans] said when he asked Cook how he could kill someone with a .22 caliber pistol, Cook responded that he shot him in the eye. [Evans] said he also expressed surprise no

one had heard the gunshot, but Cook assured him no one had heard it. Cook then told [Evans] to park at a Dollar General store and let him out so he could walk over and check on Crow, get his phone, and check for evidence. Cook returned with some money and Crow's phone, which he later smashed and disposed of in a dumpster. [Evans] then dropped Cook off at his girlfriend Rudd's house and went home.

The police analyzed [Evans]'s cell phone, but were unable to find any calls or text messages made from February 19, 2013, to February 23, 2013, because they had been erased. The police analyzed the phone Cook used that was registered to his girlfriend, Rudd. An analysis of the records for that phone revealed on February 19, 2013, Cook had contacted [Evans]'s phone at 2:24 p.m., and [Evans]'s phone had contacted Rudd's (Cook's) phone at 2:32 p.m. The records of these calls or text messages had been deleted from both phones. The record also showed that between 5:42 p.m. and 7:10 p.m. on February 19, 2013, 42 text messages were sent between Rudd's (Cook's) phone and Crow's phone.

Cook pled guilty to first-degree murder and received life in prison with no parole. The State charged [Evans] with first-degree murder as Cook's accomplice. After a trial, the jury was instructed on both first- and second-degree murder under an accomplice liability theory, and after deliberation, found [Evans] guilty of second-degree murder. [Evans] was sentenced by the trial court to twenty-five years' imprisonment.

Doc. 11-6 at pp. 2–5.

## II.   Standard

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254[.]" *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005), *as amended* (June 21, 2005).  Federal habeas review exists only as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).  Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th

Cir. 2003) (citing 28 U.S.C. § 2254).  For a federal court to grant an application for a writ of

habeas corpus brought by a person in custody by order of a state court, the petitioner must show

that the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d)(1)–(2).  A determination of a factual issue made by a state court is

presumed correct unless the petitioner successfully rebuts the presumption of correctness by

clear and convincing evidence.  § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if

the state court either 'applies a rule that contradicts the governing law set forth in [Supreme

Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of

[the] Court and nevertheless arrives at a result different from [the] precedent.'"  *Penry v.

Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

An unreasonable application of clearly established Supreme Court precedent occurs where the

state court identifies the correct governing legal principle but unreasonably applies that principle

to the facts of the case.  *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).  Finally, a state court

decision may be considered an unreasonable determination of the facts "only if it is shown that

the state court's presumptively correct factual findings do not enjoy support in the record."  *Id*.

## III.    Discussion

Evans asserts three grounds for relief in his amended habeas petition.  Doc. 5.  First,

Evans claims that the trial court erred in denying his motion to suppress his statements to police

and in admitting the statements at trial over his counsel's objection.  *Id.* at pp. 5–11.  Second,

Evans claims that the trial court erred in denying his motion for judgment of acquittal due to

insufficient evidence.  *Id.* at pp. 12–18.  Third, Evans claims that his trial counsel was ineffective for failing to call Matthew Cook, Evans's codefendant, to testify.  *Id.* at pp. 19–25.

### A.      Motion to suppress Evans's statements to police

In his first ground, Evans claims that the trial court erred in overruling his motion to suppress his statements to police, and in admitting that evidence at trial over his objection.  Doc. 1 at p. 5.  Evans claims that the officers did not have reasonable suspicion or probable cause to stop Evans, and that his subsequent statements during interrogation were the "fruit of the poisonous tree" and the only evidence supporting a finding of second-degree murder.  *Id.*  Evans presented this same argument on direct appeal, Doc. 11-3 at pp. 48–55, and the Missouri Court of Appeals disagreed, finding that based on the totality of the circumstances, "Trooper Jarrell had reasonable suspicion to detain [Evans]."  Doc. 11-6 at pp. 10–11.

As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated Evans's claim "on the merits" within the meaning of § 2254(d).  *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).  Because the Court of Appeals adjudicated his claim on the merits, Evans cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).  *See* 28 U.S.C. § 2254.

The Missouri Court of Appeals found the following facts relevant as part of the "totality of the circumstances" supporting reasonable suspicion:  (1) Trooper Jarrell and Sheriff Hefner went to Evans's house to interview him because he was with Cook at Applebee's when police officers arrested Cook; (2) Trooper Jarrell knew Evans was Cook's friend; (3) when Sheriff Hefner knocked at his door and was let in, Evans burst out the side door of the house running at a

sprint; (4) Evans continued fleeing after Trooper Jarrell told Evans to stop; and (5) after he was

finally caught, when asked why he ran, Evans immediately brought up Cook and that he had shot

someone in the head.  Doc. 11-6 at pp. 3–4, 10–11.

The court applied the Supreme Court's holding in *Sokolow* that "[w]hen evaluating

reasonable suspicion, courts consider the totality of the circumstances, including factors that may

be consistent with innocent conduct when considered alone, but that, when taken together, may

amount to reasonable suspicion."  Doc. 11-6 at p. 11 (citing *State v. Kelly*, 119 S.W.3d 587, 594

(Mo. Ct. App. 2003)); *United States v. Sokolow*, 490 U.S. 1, 8–10 (1989).  The court's

application of this well-established precedent was not unreasonable—even apart from Evans's

statement after he was caught, based on the other facts the Missouri Court of Appeals identified,

the police had reasonable suspicion to conduct a *Terry* stop.  *See Terry v. Ohio*, 392 U.S. 1, 5–6,

30 (1968).  The Missouri case the court relied on, *State v. Kelly*, articulates that:

> Evasion—the consummate act of which is flight—is a "pertinent factor in
> determining reasonable suspicion."  *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.
> Ct. 673, 145 L. Ed. 2d 570 (2000).  Flight "is not necessarily indicative of
> wrongdoing, but it is certainly suggestive of such."  *Id.* at 125, 120 S. Ct. 673
> (unprovoked flight from uniformed officers in high crime area justified reasonable
> suspicion of criminal activity and stop to investigate further).  This is true even
> though there are also innocent reasons for fleeing from the police.  *Id.*  Even where
> the conduct articulated as justification for the stop is ambiguous and susceptible of
> an innocent explanation, if it also suggests criminal activity, then detention to
> resolve the ambiguity does not violate the Fourth Amendment.  *Id.* (citing *Terry*,
> 392 U.S. at 5–6, 30, 88 S. Ct. 1868).

*Kelly*, 119 S.W.3d at 594–95.  Evans's known connection to Cook, combined with his flight

from the house after Sheriff Hefner went inside, provided reasonable suspicion for the stop.

The Court observes, however, that Evans's detention, transportation via police car to the

police station, and questioning at the police station extended beyond the boundaries of a *Terry*

stop and are "indistinguishable from a traditional arrest."  *See Dunaway v. New York*, 442 U.S.

200, 212 (1979).  Thus, if Evans did not consent, the police needed probable cause—not just

reasonable suspicion—to proceed beyond the "brief and narrowly circumscribed intrusions"

justified by *Terry* and its progeny.  *Id.* at pp. 211–12.  Additionally, the Court clarifies that Evans

was not "seized" for Fourth Amendment Purposes until he was apprehended—which occurred

*after* he continued fleeing, disregarding Trooper Jarrell's command to stop.

Though the court of appeals did not mention it, the Court notes that Mo. Rev. Stat. §

575.150 (2009), in effect at the time of the events in this case, states:

> 1. A person commits the crime of resisting or interfering with arrest, detention, or
> stop if, knowing that a law enforcement officer is making an arrest, or attempting
> to lawfully detain or stop an individual or vehicle, or the person reasonably should
> know that a law enforcement officer is making an arrest or attempting to lawfully
> detain or lawfully stop an individual or vehicle, for the purpose of preventing the
> officer from effecting the arrest, stop or detention, the person:
>
> (1) Resists the arrest, stop or detention of such person by using or threatening the
> use of violence or physical force or by fleeing from such officer;
> . . . .
>
> 2. This section applies to:
>
> (1) Arrests, stops, or detentions, with or without warrants;
> . . . .
>
> 4. It is no defense to a prosecution pursuant to subsection 1 of this section that the
> law enforcement officer was acting unlawfully in making the arrest. However,
> nothing in this section shall be construed to bar civil suits for unlawful arrest.

As discussed above, the Missouri Court of Appeals found that, based on the totality of the

circumstances, the police had reasonable suspicion to temporarily detain Evans when he fled

from his house after police showed up to ask him questions about the murder.  So when Evans

continued to flee after Trooper Jarrell identified himself and told Evans to stop, the police then

had probable cause to arrest Evans for the crime of resisting detention under Mo. Rev. Stat. §

575.150 (2009).  Therefore, even if Evans's detention and questioning exceeded the boundaries

of a *Terry* stop, the Missouri courts' decisions were not "contrary to," or did not "involve[] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1), because the police had probable cause to arrest Evans.

For these reasons, the Court denies the first ground in Evans's petition for habeas relief.

**B.       Insufficient evidence**

In his second ground, Evans challenges the trial court's denial of his motion for judgment of acquittal, arguing that the State presented insufficient evidence at trial to prove beyond a reasonable doubt that he had the purpose of promoting second degree murder.  Doc. 5 at p. 12. As he argued in his direct appeal, Evans claims that "there was no evidence that Evans believed that Matthew Cook intended to kill Sean Crow nor that it was a likely result of driving Cook to Advance."  *Id.*; Doc. 11-6 at p. 5.  Therefore, Evans claims, his conviction violated due process. Doc. 12 at p. 10 (citing *In re Winship*, 397 U.S. 358, 364 (1970)).  The Missouri Court of Appeals rejected this same argument on direct appeal, finding the evidence the State presented at trial sufficient to allow "a reasonable juror [to] find that Evans aided Cook in Crow's murder." Doc. 11-6 at p. 8.

As a threshold matter, the Court finds that the Missouri Court of Appeals adjudicated Evans's claim "on the merits" within the meaning of § 2254(d).  *See Johnson*, 568 U.S. at 301. Because the Court of Appeals adjudicated his claim on the merits, Evans cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2).

The Missouri Court of Appeals explained that under the law of accessory liability in Missouri, which emanates from statute, "[a] person is criminally responsible for the conduct of another when either before or during the commission of an offense, with the purpose of promoting the commission of the offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense."  Doc. 11-6 at p. 6 (citing *State v. Barnum*, 14 S.W.3d 587, 590 (Mo. 2000), *as modified* (Apr. 25, 2000); Mo. Rev. Stat. § 562.041.1(2)).  The court explained that while the doctrine of accomplice liability "comprehends any of a potentially wide variety of actions intended by an individual to assist another in criminal conduct, the evidence need not show the defendant personally committed every element of the crime."  *Id.* (citing *Barnum*, 14 S.W.3d at 591) (internal citation omitted).

The court identified three highly relevant circumstances for inferring accomplice liability: (1) "where there is a statement or conduct by the defendant or . . . by a codefendant in the presence of defendant prior to the murder indicating a purpose to kill a human"; (2) where "the murder is committed by means of a deadly weapon and the accomplice was aware that the deadly weapon was to be used in the commission of a crime"; and (3) "where there is evidence that the accessory either participated in the homicide or continued in the criminal enterprise when it was apparent that a victim was to be killed."  *Id.* at pp. 6–7 (citing *State v. Gray*, 887 S.W.2d 369, 376 (Mo. 1994)).  The court also noted that "acts or conduct of an accused subsequent to an offense" can provide a permissible inference of guilt "if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein."  *Id.* at p. 7 (citing *State v. Fitzgerald*, 778 S.W.2d 689, 691 (Mo. Ct. App. 1989)); see also *id.* (citing *State v. Johns*, 34 S.W.3d 93, 112 (Mo. 2000); *State v. Harrison*, 698 S.W.2d 564, 566 (Mo. Ct. App. 1985) (listing flight as an act that can show consciousness of guilt)).

In light of these principles, the Missouri Court of Appeals conducted a review "limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt," while "accept[ing] as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard[ing] all evidence and inferences to the contrary."  Doc. 11-6 at p. 6 (citing *State v. Grim*, 854 S.W.2d 403, 405 (Mo. 1993)).  Based on this standard of review, the court found the following facts sufficient to allow "a reasonable juror [to] find that Evans aided Cook in Crow's murder":

- Evans knew Cook was angry, "knew Cook had a gun with him when he drove him to Advance to 'take care of some business' with Crow," and "[o]n the way to Advance, Cook said, 'I'm gonna kill him.'"
- "When Cook exited [Evans]'s car to confront Crow, [Evans] saw Cook had the gun tucked into the back of his pants."
- Evans "waited until all the gas pumps were cleared of customers before driving around to the back of McDonald's and letting Cook out of his car" and then "witnessed Cook walking to Crow's truck with a gun and did nothing to stop him or alert authorities."
- After Cook shot Crow, Evans drove to a nearby store "and let Cook out so Cook could go back to Crow's truck and check for evidence, as well as take his cell phone and money."
- Evans "stopped the car on the way back home so Cook could destroy Crow's cell phone and discard it in a dumpster."
- "Cook had been texting Crow on the way to Advance and told [Evans], 'He thinks he's getting some pu**y.'"
- "[Evans] ran from the police when they came to his house," then "initially denied all involvement," and "lied about the fact that he was with Cook, drove him to Advance, or had even been to Advance in a year."

Doc. 11-6 at pp. 7–8.

These factual findings of the Missouri Court of Appeals are "presumptively correct" and also "enjoy support in the record."  *See Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).  Nothing in Evans's petition or the state-court records suggests that the Court of Appeals based its ruling "on an unreasonable determination of the facts."  28 U.S.C. § 2254(d)(2).  Further, in a

§ 2254 setting the Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Applying the *Jackson v. Virginia* standard to the Missouri Court of Appeals' factual findings, the Court is "satisfied that the Missouri Court of Appeals' resolution of this issue was not contrary to, or an unreasonable application of, clearly established federal law." *Evans*, 371 F.3d at 442. Accordingly, the Court denies the second ground in Evans's petition for habeas relief.

### C.     Ineffective assistance of counsel

In his third ground, Evans alleges that his trial counsel was ineffective because he failed to investigate and call Evans's codefendant, Matthew Cook—"a favorable witness"—to testify at trial. Doc. 1 at p. 19. According to Evans, "Cook had made statements during a police interview that exonerated Evans of any knowledge and/or fault." *Id.*

The Missouri Court of Appeals adjudicated this claim on the merits in its decision denying Evans's postconviction appeal, Doc. 11-12 at p. 12, so Evans cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). To grant relief under § 2254, the Court must conclude that the state court unreasonably applied the *Strickland* test or that, in reaching its conclusions regarding the performance of Evans's attorney, it made unreasonable factual conclusions. *Gabaree v. Steele*, 792 F.3d 991, 998 (8th Cir. 2015). *Strickland* requires Evans to show that his counsel's

performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Missouri Court of Appeals addressed several ineffective-assistance-of-counsel claims in denying Evans post-conviction relief.  The Court of Appeals noted that, under *Strickland*, to succeed in these claims Evans must show that "(1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances" and that "(2) his counsel's deficient performance prejudiced him."  Doc. 11-12 at p. 8 (citing *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. 2006) (citing *Strickland*, 466 U.S. at 687– 92)).  Addressing the same ineffective-assistance-of-counsel claim Evans raises here, the court held as follows:

> In Paragraph 8(b) of the amended Rule 29.15 motion, [Evans] claimed Trial Counsel failed to call [Cook], a favorable witness to [Evans]'s defense. To prevail on a claim of ineffective assistance of counsel for failure to call a favorable witness, a movant must show Trial Counsel knew or should have known of the existence of the witness, that a reasonable investigation would have resulted in the location of the witness, the witness would testify, and the information would have aided and improved the defense. *Hutchinson v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004).

> The motion court found [Cook] would not have testified at the trial so [Evans] fails in his claim Trial Counsel failed to call a favorable witness. The State was seeking the death penalty against [Cook] at the time of [Evans]'s trial. [Cook], after entering a guilty plea for first-degree murder, testified at the evidentiary hearing. The motion court found it credible that [Cook] would not have testified at the trial while the State sought the death penalty against him. The motion court did not find [Cook]'s other testimony credible. We defer to the credibility determinations of the motion court. *Barton*, 432 S.W.3d at 760 (internal citation omitted). The motion court did not clearly err denying Movant's claim against Trial Counsel for failing to call Co-Defendant.

Doc. 11-12 at p. 12.

The decisions of the Missouri Court of Appeals are entitled to deference. 28 U.S.C. § 2254(d).  The court's application of *Strickland*, 466 U.S. at 687, was reasonable in concluding Evans's counsel was not ineffective because Cook would not have testified at trial due to the

State's seeking the death penalty against him at that time.  The court's decision is not contrary to, nor does it involve, an unreasonable application of federal law.  Further, the factual findings of the Missouri Court of Appeals (deferring to the motion court's credibility findings) are "presumptively correct" and also "enjoy support in the record."  *See Ryan*, 387 F.3d at 790. Nothing in Evans's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts," including the motion court and Court of Appeals' determination that Cook would not have testified at trial.  *See* § 2254(d)(2).

In his habeas petition, Evans also argues that his trial counsel was ineffective for failing to investigate whether "Cook had made any out-of-court statements about what had happened the night of the murder that could be favorable for the Defense."  Doc. 5 at p. 21.  He elaborates further in his Traverse, claiming that his trial counsel was unaware of a recorded interview with Cook that the State disclosed before trial.  Doc. 12 at pp. 13–14.  The Missouri Court of Appeals specifically addressed this argument, agreeing with the motion court that Evans waived the claim because he did not allege it in his amended Rule 29.15 motion.  Doc. 11-12 at p. 10; *see also* Doc. 11-8 at pp. 133-34 (noting that "[a]t the evidentiary hearing, [Evans] raised for the first time many other allegations of ineffective assistance of counsel, including . . . the failure to offer into evidence Mr. Cook's recorded interview with police" and that "none of these issues were raised in [Evans]'s amended motion").  The court further observed that in Missouri, "[c]laims not raised in a Rule 29.15 motion are waived on appeal," and that "[a] movant cannot remedy pleading defects by refining or expanding a claim or presenting new evidence on appeal."  *Id.* at p. 9 (citing *Dorsey v. State*, 448 S.W.3d 276, 284 (Mo. 2014)).

According to the Supreme Court, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-

court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  For this reason, federal habeas courts "will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker  v. Martin*, 562 U.S. 307, 314 (2011).  "[T]he state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Id.* at 315.  The adequacy of a state procedural rule is a question of federal law, *Lee v. Kemna*, 534 U.S. 362, 375 (2002), and "[t]o qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker*, 562 U.S. at 316 (citing *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)).

> Here, Missouri Supreme Court Rule 29.15 states in relevant part:

> The motion to vacate shall include every claim known to the movant for vacating, setting aside, or correcting the judgment or sentence. The movant shall declare in the motion that the movant has listed all claims for relief known to the movant and acknowledging the movant's understanding that the movant waives any claim for relief known to the movant that is not listed in the motion.

Mo. Sup. Ct. R. 29.15.  Missouri courts have repeatedly held that any claim not raised in a Rule 29.15 motion is waived.  *See, e.g.*, *Shockley v. State*, 579 S.W.3d 881, 899 (Mo. 2019), *reh'g denied* (Sept. 3, 2019); *McNeal v. State*, 500 S.W.3d 841, 845 n.3 (Mo. 2016); *Dorsey v. State*, 448 S.W.3d 276, 284 (Mo. 2014); *Barton v. State*, 432 S.W.3d 741, 756 (Mo. 2014); *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. 2014); *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. 2012); *Johnson v. State*, 333 S.W.3d 459, 471 (Mo. 2011); *State v. Clay*, 975 S.W.2d 121, 141 (Mo. 1998), *as modified on denial of reh'g* (Sept. 22, 1998); *Shaw v. State*, No. WD 83935, 2021 WL 5570375, at *4 (Mo. Ct. App. Nov. 30, 2021); *Cooper v. State*, 621 S.W.3d 624, 630 (Mo. Ct. App. 2021), transfer denied (June 1, 2021); *Hogan v. State*, 631 S.W.3d 564, 576 (Mo. Ct. App.

2021); *Polk v. State*, 605 S.W.3d 427, 433 (Mo. Ct. App. 2020); *Hill v. State*, 532 S.W.3d 744, 750 (Mo. Ct. App. 2017); *Haddock v. State*, 425 S.W.3d 186, 191 (Mo. Ct. App. 2014); *Wright v. State*, 453 S.W.3d 234, 238 (Mo. Ct. App. 2014); *Pines v. State*, 778 S.W.2d 724, 725 (Mo. Ct. App. 1989); *see also Francis v. Miller*, 557 F.3d 894, 899 (8th Cir. 2009) (stating that Rule 29.15 is a "firmly established and regularly followed" state procedural rule that provides "well-established procedures that movants are required to follow in order to have their claims considered post-trial").

As the Eighth Circuit held in *Francis*, where "[t]he Missouri Court of Appeals refused to address the merits of [the petitioner]'s failure-to-investigate claim because she did not include it in her post-conviction motion filed under [Rule] 29.15," here "[t]here is no avoiding a conclusion that the Missouri Court of Appeals relied on a 'firmly established and regularly followed' state procedural rule" in rejecting Evans's failure-to-investigate claim. *Francis*, 557 F.3d at 899.

However, the Court may still review the defaulted claim if Evans can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Harris v. Wallace*, 984 F.3d 641, 648 (8th Cir. 2021) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). In *Coleman*, the Supreme Court established that "'ineffective assistance of counsel *during state post-conviction proceedings* cannot serve as cause to excuse factual or procedural default.'" *Id.* (emphasis added) (citing *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009)). However, in *Martinez* the Supreme Court created a "narrow exception" to *Coleman* where:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

*Harris*, 984 F.3d at 648 (citing *Kemp v. Kelley*, 924 F.3d 489, 499 (8th Cir. 2019), *cert. denied sub nom. Kemp v. Payne*, 140 S. Ct. 2770 (2020); *Martinez*, 566 U.S. at 14); *see also Franklin v. Hawley*, 879 F.3d 307, 313 (8th Cir. 2018) (citing *Martinez*, 566 U.S. at 10) (holding that "it is clear that the *Martinez* exception applies only if the procedural default occurs during the *initial-review* of the ineffective assistance claim" rather than during appeals from initial-review collateral proceedings).

Here, Evans does not even raise a shadow of a *Martinez* claim.  Instead, he merely repeats the defaulted ineffective-assistance-of-trial-counsel argument he made to the Missouri Court of Appeals.  Even construing his petition liberally, Evans "has not even attempted to show cause for his default"; therefore, the Court does not address the *Martinez* issue.  *See Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir. 1992) (reversing the district court's grant of habeas corpus where "the district court should not have addressed" the procedural default issue because the petitioner "ha[d] not even attempted to show cause for his default"); *see also Bracken v. Dormire*, 247 F.3d 699, 703 (8th Cir. 2001) (stating that "district courts must be as mindful as the appellate courts to adjudicate on the merits only those claims that the prisoner properly raises and to avoid those issues that have not been properly raised"); *Jones v. Jerrison*, 20 F.3d 849, 856 (8th Cir. 1994) (finding that, "[d]espite ample opportunity to do so, [the petitioner] did not make [cause and prejudice] allegations in the district court, the proper place to plead and prove exceptions to procedural default").

Accordingly, the Court denies the third ground in Evans's petition for habeas relief.

## IV.    Certificate of Appealability

The Court finds that Evans has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C.

§ 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court does not issue a certificate of appealability as to any claims raised in Evans's § 2254 petition.

## V.    Conclusion

The Court denies Petitioner Glen Evans's amended petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. Doc. 5. The Court dismisses Evans's [5] amended petition with prejudice. The Court does not issue a certificate of appealability.

So Ordered this 28th day of December 2021.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE